**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 10-22236-CIV-GOLD/GOODMAN**

HOWARD ADELMAN and
JUDITY SCLAWY, as
Co-Personal Representatives of THE
ESTATE OF MICHAEL SCLAWY-ADELMEN,

      Plaintiffs,

vs.

BOY SCOUTS OF AMERICA, et al

      Defendants.

_____/

**ORDER CONCERNING PLAINTIFFS' MOTION TO COMPEL**
**BETTER RESPONSES TO REQUEST FOR PRODUCTION**

      This Cause is before the Court in connection with Plaintiffs' Motion to Compel Better Responses to Request for Production (DE# 198).  The Court has reviewed the pertinent portions of the record and held a hearing on the motion on May 18, 2011.

      Although the documents at issue may well not be *admissible* at trial, they are within the broad scope of permissible discovery and the Court will therefore grant the motion. This Order, however, in no way suggests or implies that the documents are or should be admissible at trial.  Likewise, it does not preclude Defendants from pursuing other steps to prevent the use of the documents at trial, such as the pre-trial filing of motions *in limine* or the in-trial objection to efforts to introduce the documents into evidence.

**General Background**

      Michael Adelman died in May 2009, when he was 17 years old, while on a 20-mile hike conducted in the Big Cypress Preserve. Boy Scout leaders, Defendants Howard Crompton and Andrew Compton, were the adult supervisors on the hike.

      Although an autopsy was not performed, Plaintiffs advised the Court that the medical examiner testified that heat stroke was the likely cause of death. According to Plaintiffs, the

U.S. Park Service Report of Michael Adelman's death shows that temperatures in the Preserve reached 100 degrees during the early afternoon of the hike.

Plaintiffs allege that Michael began showing signs and symptoms of heat exhaustion (and, later, of heat stroke) as the hike progressed. They allege that Michael began to speak incoherently and that he stumbled and lost his balance.  During a one and a half hour break at a clearing, Plaintiffs contend, Michael became unresponsive and started to make snoring-like noise.  Plaintiffs say that Defendant Crompton did not call 911 for emergency assistance until after Michael suddenly stopped breathing. By the time emergency helicopters arrived, Michael could not be resuscitated and was declared dead.

Plaintiffs, the Co-Personal Representatives of Michael's estate, brought a wrongful death lawsuit against the two individual Defendants and the Boy Scouts of America ("BSA").

### The Discovery at Issue and the Alleged Connection to the 2005 Jamboree

Although Michael died during a 2009 hike, Plaintiffs have propounded discovery concerning a heat index flag system which the BSA developed for use at its 2010 Jamboree. A BSA Jamboree is a national event attended by thousands of scouts. Plaintiffs also seek documents concerning the research, studies and investigation which the BSA conducted or relied upon in connection with the heat flag system first used at its 2010 Jamboree.

Plaintffs say they are seeking these materials because they show, or could show, how the BSA responded to a catastrophe which plagued the 2005 BSA Jamboree.  Plaintiffs contend that the Centers for Disease Control and Prevention reported more than 3,480 Scouts as having sustained heat-related injuries at the 2005 Jamboree.  Of those, more than 1,600 suffered heat exhaustion and/or heat stroke.  Plaintiffs also stress that the CDC report explains that many of the BSA policies and procedures in effect during the 2005 Jamboree were deficient and therefore were a cause of the high number of heat-related injuries.

In response to the 2005 Jamboree injuries, the BSA adopted a heat index flag system for the 2010 Jamboree.  Basically, the system calls for limitations on activities and an increase in fluid intake as the heat index progresses. Each category of activity and activity level is represented by a different color flag, ranging from white to black. Under black flag conditions, the most-restrictive in the flag system, Scouts are directed to "limit activity" and increase their fluids to "one quart per hour with frequent rest periods" and to "stay in the shade."

Plaintiffs also note that BSA's corporate representative testified that the flag system used at the 2010 Jamboree had been under consideration as early as late 2007.

According to Plaintiffs, the temperatures and humidity present during Michael's final hike in May 2009 would have triggered black flag conditions had the system used at the 2010 Jamboree been in use. Plaintiffs argue that Defendant Schmidt testified that the hike was expected to last 9 hours but advised the Scouts in a pre-hike email to bring a total of only 3 to 4 quarts of water. For comparison purposes, Plaintiffs note that the black flag conditions for the 2010 Jamboree require 1 quart of fluid to be ingested per hour.

Framed by this background, Plaintiffs propounded 14 categories of document requests concerning, in general, all reports, studies, articles and analysis which the BSA generated or used during the 2010 Jamboree and which related to the heat index flag system or procedures designed to reduce or prevent heat-related ailments and injuries.[1]

### The BSA's Objections to the Discovery

BSA objected to the production. According to its written Objections, BSA contends that the documents at issue are not likely to lead to the discovery of admissible evidence, are overbroad, are not limited in temporal scope. Basically, the BSA takes the position that the documents are irrelevant and therefore not subject to discovery.

To support its relevancy-based objections, BSA notes that the flag system applies only to the 2010 Jamboree, not to hikes in general. The BSA emphasizes that the military developed the heat index flag system, that the 2010 Jamboree occurred on a military base (where Scout leaders, military personnel and volunteers could observe the Scouts and hoist the flags needed for the heat index system) and that heat index system would be implemented or monitored by medical professionals on site at the military base. It also stresses the limited applicability of the flag system (i.e., only for the 2010 Jamboree). It argues that the flag system, designed for use during a 10-day Jamboree on a military base, simply can't be used on a small, informal day hike through the wilderness or a national preserve.

Based on these specific objections, the BSA argues that the written document requests at issue here are tantamount to an impermissible "fishing expedition." The BSA did

---

[1] Plaintiffs propounded significantly more written discovery but these categories are the ones at issue in the motion.

not, however, interpose any type of privilege-related objection, nor did it assert other objections, such as trade secrets, privacy, or undue burden.

In addition to stressing what it believes to be a critical difference between a Jamboree and a hike, the BSA also objects to the post-event nature of the documents at issue. Because Michael died during a 2009 hike, the BSA contends, a safety measure implemented for a 2010 event is irrelevant.

In response, Plaintiffs say they are not necessarily interested in whether a *flag* could be raised on a non-Jamboree hike involving only five Scouts. Instead, they explain that they are focused on the *criterion* and *principles* supporting the flag system. For example, if a particular flag called for Scouts at the 2010 Jamboree to drink a certain amount of fluid when the temperature and humidity reached a certain level, then those guidelines are relevant to the procedures and guidelines which should have used by the two leaders on the hike at issue in this case when the temperature and humidity reached those same levels. The mere fact that a flag would not actually be physically hoisted on a hike is a distinction without a difference for discovery purposes, Plaintiffs say.

Moreover, Plaintiffs argue that the procedures implemented for the 2010 Jamboree were at least being considered before the fatal 2009 hike. Beyond that, Plaintiffs say, post-accident events are frequently discoverable and sometimes even admissible.

<u>**Applicable Legal Standards**</u>

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."*Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545, 1547 (11th Cir. 1985). Rule 26(b) therefore permits a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party . . . ." FED. R. CIV. P. 26(b). "The Courts have long held that **relevance for discovery purposes** is **much broader** than relevance for **trial** purposes," and as such "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Dunkin'Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079319, *2 (S.D.Fla. Nov. 1, 2001) (emphasis added).

United States Magistrate Judge Linnea Johnson summarized the rules underlying the comparatively broad scope of discovery in *Donahay v. Palm Beach Tours & Trans., Inc.*, 242 F.R.D. 685, 687  (S.D. Fla. 2007):

Information is relevant if it is "germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence." *Parsons v. General Motors Corp.,* 85 F.R.D. 724 (N.D.Ga.1980). *See also Hickman,* 329 U.S. at 501, 67 S.Ct. 385. Thus, under Rule 26 relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." *Id.* at 352, 98 S.Ct. 2380. In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States,* 502 F.2d 506 (5th Cir.1974).

As the party resisting discovery, BSA has the burden to demonstrate specifically how the request is unreasonable or not relevant. *Id. See generally Desrosiers v. MAG Industrial Automation Systems, LLC*, 675 F. Supp.2d 598, 602 (D. Md. 2009) (noting a distinction in burdens between party resisting *discovery* -- who must specifically explain why relevancy objection is proper and why the discovery is *improper* -- and party offering evidence at trial -- who bears the burden of demonstrating that the evidence is *proper* and relevant).

BSA's argument that the requests are a mere "fishing expedition" is not persuasive. "'[T]he purpose of discovery is to allow a broad search for facts . . . or any other matters which may aid a party in the preparation or presentation of his case,'" and, while subject to relevance, undue burden, overbreadth, and privilege limitations, "the Rules . . . permit 'fishing for evidence.'"  *AIG Cent. Ins. v. O'Neill*, 2010 WL 4116555, *3 (S.D. Fla. Oct. 18, 2010) (emphasis supplied).[2]

Although the documents concerning the heat index system and the research and studies which led to its adoption may not be admissible at trial, that is not the standard for determining their discoverability.

---

[2]     For additional fishing analogies concerning discovery, see *Myers v. The Prudential Insurance Co.,* 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008) ("much of discovery is a fishing expedition of sorts" and the courts should "determine the pond, the type of lure, and how long the parties can leave their lines in the water") and *Eli Lilly & Co. v. Invagen Pharmaceuticals, Inc.*, 2009 WL 3018744, at *1 (S.D. Ind. 2009) (acknowledging fishing metaphor for discovery and describing one party as "want[ing] to sail a trawler through the Atlantic Ocean" and explaining that the opposing party wants to permit only a visit "to a fishing hole for five minutes with a plastic worm").

Michael Adelman died during a Boy Scout hike, likely of heat exhaustion. The documents at issue concern procedures designed to protect Scouts from heat exhaustion and heat stroke. Moreover, there are grounds to believe that the BSA may have been considering additional safeguards concerning heat exhaustion before Michael died during the 2009 hike. BSA has not demonstrated that the discovery "has no possible bearing on the claims and defenses" in this case. *Tate v. U.S. Postal Service*, 2007 WL 521848 (S.D. Fla. Feb. 14, 2007)

Phrased differently, BSA must demonstrate that the requested documents "either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gober. v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000).

Given that the BSA may have conducted or reviewed research on safety precautions concerning heat stroke or heat exhaustion before the death at issue here and given that "the relevancy of similar accident evidence has been firmly established in this Circuit," *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1491 (11th Cir. 1984), the documents at issue here are discoverable and Plaintiffs' motion to compel will be granted.

To be sure, the fact that BSA says the 2010 Jamboree procedures are completely inapplicable to non-Jamboree hikes and were implemented after the 2009 hike at issue may be grounds to exclude the evidence at *trial*. But these differences are inadequate to shut down *discovery* of information which falls within the broad scope of Rule 26. The heat index system used for the 2010 Jamboree and the research which was relied upon for implementing it are discoverable issues because, by way of example, they may demonstrate whether the research and the protective measures were discussed and recognized before the fatal 2009 hike through the Big Cypress Preserve (and whether all, some or none of the measures could have been used for the hike) or whether the hydrations concerns implicit in the 2010 system should have also been concerns during the 2009 hike.

Thus, to continue the fishing expedition metaphor, Plaintiffs' discovery is not an effort to ram a cruise ship through an ocean of discovery. Instead, it is an acceptable strategy

designed to motor a 15-foot Boston Whaler with a 65-horsepower outboard engine down a few creeks in the Preserve.[3]

### Conclusion

Plaintiffs' motion to compel is granted.  Defendant BSA shall produce the requested materials within 15 days of the date of this Order.

Plaintiffs did not seek fees or costs in connection with this motion, so none will be ordered. Nevertheless, the Court would not have awarded fees or costs even if Plaintiffs included such a demand because the objection, though unsuccessful, was substantially justified.

DONE AND ORDERED in Chambers, at Miami, Florida, this 19th day of May, 2011.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Alan S. Gold
Counsel of Record

---

[3]      The Big Cypress National Preserve consists of more than 720,000 acres of freshwater swamp. Established in 1974 and operated by the National Park Service, the Preserve covers three Florida counties:  Collier, Monroe and Dade. www.nps.gov/bicy/faqs.htm (last visited May 19, 2011); http://usparks.about.com/blplanner-bigcypress.htm (last visited May 19, 2011).