UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22236-CIV-GOLD/GOODMAN

HOWARD ADELMAN and
JUDITY SCLAWY, as
Co-Personal Representatives of THE
ESTATE OF MICHAEL SCLAWY-ADELMEN,

       Plaintiffs,

vs.

BOY SCOUTS OF AMERICA, et al

       Defendants.
_____/

### ORDER ON DEFENDANTS' MOTION FOR ORDER RE: BLOOD TESTING

This Cause is before the Court in connection with Defendants' Motion for Order Authorizing Release of Michael Sclawy-Adelman's Blood Sample to NMS Labs to Conduct an "Amphetamines" Test (DE 260). The Court has reviewed the motion and Plaintiffs' Response, opposing the motion (DE 279). For the reasons outlined below, the motion is **granted.**

The parties contest the exact cause of death in this wrongful death lawsuit. Because the Plaintiffs did not permit an autopsy of their 17-year-old son, Michael, none was performed.[1] The medication Michael was taking prior to and during the hike is an important issue in the case. Defendants contend that the medication and the chemical impact it had on Michael's body contributed to or caused his death.

According to limited testing of a blood sample taken from Michael the day after he died, Michaels' blood contained phenylpropanolamine and pseudoephedrine, which, according to the medical deposition testimony in the case, can be found in diet drugs. Michael's weight is an issue in the case and Defendants want to have Michael's blood

---

[1] The Deputy Chief Medical Examiner testified that he would have removed Michael's heart, brain and organs and dissected the organs and brain during an autopsy. He further testified that autopsies violate Jewish religious tradition by desecrating the body.

sample further tested to determine the quantity of the two chemicals already found in the limited blood testing. In particular, Defendants would like an amphetamine test to be performed because it tests for appetite suppressants, a category not encompassed by the ephedrine test previously approved by Plaintiffs' counsel. Given that Michael was overweight (but the parties disagree about the extent), Defendants say they need the amphetamine test because no autopsy was performed and because the test might reveal whether Michael was taking appetite suppressants, also known as diet drugs, which could be a contributing factor in his death.

The laboratory selected to conduct the amphetamine test on the existing blood sample requires a court order and Defendants also request parental consent to be provided along with an order.

Plaintiffs, already agreed to the ephedrine panel test, but oppose the request for the additional amphetamine testing.

Plaintiffs do not argue that the court lacks authority to grant the requested relief. Instead, they contend that the court should exercise its discretion and not to permit the requested testing on an existing blood sample.

Plaintiffs' opposition confuses the standards for admissibility at trial with pre-trial discoverability, which is a significantly broader standard. Plaintiffs' argument delves into considerable medical detail, (e.g., discussing Michael's cholesterol levels and the absence of certain types of warnings on over-the-counter allergy medicine) in an effort to persuade the Court why the additional study should not be performed along with the ephedrine panel assessment which Plaintiffs already agreed to several months ago.

In effect, Plaintiffs are urging the Court to enter what would amount to either a summary judgment or order granting a motion in limine on the issue of whether a not-yet-determined amount of an amphetamine in a previously-drawn blood sample is inadmissible at trial. The Court is not prepared to make such a potentially far-reaching decision, especially when the medical results have not yet been determined. It is also constrained from doing so by the limited nature of the referral in this case (i.e., for discovery only) and by the broad standard of discoverable information dictated by the Federal Rules of Civil Procedure and controlling precedents.

To the extent that Plaintiffs say that the amphetamine testing will cause confusion and the risk of a false positive, those are arguments which can be made before trial (in a motion in limine) or at trial, before a party seeks to introduce the evidence.

The blood testing is permitted by the Federal Rules of Civil Procedure. The cause of death is a significant issue in the case. The blood sample has already been taken from Michael after he died, so there are no invasive procedures which would be triggered by the testing. Although the test result *might* be inadmissible because it could generate confusion (or because of other reasons), this hypothetical and potentially speculative concern is not a ground to deny pre-trial discovery.

Therefore, the Court **orders and authorizes** the release of the blood sample so that NMS Labs (or any other appropriate testing facility) may conduct an amphetamine panel test (which will, by definition, also include the ephedrine panel test). Plaintiffs **shall** provide notarized affidavits in the form attached to the motion (DE 260-6) within **five** days of the entry of this order and **shall** cooperate with the Defendants as necessary in facilitating the tests.[2]

DONE AND ORDERED in Chambers, at Miami, Florida, this 17th day of August, 2011.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Hon. Alan S. Gold
Counsel of Record

---

[2] Federal Rule of Civil Procedure 37(a)(5) requires the entry of an expense award in favor of the party who filed a motion to compel which gets granted, unless one (or more) of three limited exceptions apply. Given the sensitive nature of the request and the wide discretion the court has for this type of medical testing issue, the Court finds that an expense award should not be entered on this motion. *See* Fed. R. Civ. Pro. 37(a)(5)(A)(ii) and (iii).